Filed 7/3/23  In re S.Q. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.Q., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER Q.,<br><br>Defendant and Appellant. | F085757<br><br>(Super. Ct. No. 14CEJ300276-11)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Mary Dolas, Judge.

Amy Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Hill, P. J., Levy, J. and Meehan, J.

Appellant Christopher Q. (father) appealed from the juvenile court's order terminating his parental rights pursuant to Welfare and Institutions Code section 366.26[1] to his daughter, S.Q. (born June 2022). After reviewing the juvenile court record, father's court-appointed counsel informed this court she could find no arguable issues to raise on father's behalf. This court granted father leave to personally file a letter setting forth good cause showing that an arguable issue of reversible error exists. (*In re Phoenix H.* (2009) 47 Cal.4th 835, 844.) Father filed a letter but failed to address the termination findings or order, or set forth a good cause showing that any arguable issue of reversible error arose from the termination of his parental rights. (*Ibid.*) Consequently, we dismiss the appeal.

<strong><u>FACTUAL AND PROCEDURAL BACKGROUND</u></strong>

**Petition and Detention**

In June 2022, the Fresno County Department of Social Services (department) filed a petition on behalf of S.Q. pursuant to section 300, subdivisions (b)(1) (failure to protect) and (j) (abuse of sibling) shortly after her birth. The petition alleged M.L. (mother) had a substance abuse problem, used substances during her pregnancy, and received limited prenatal care. The petition further alleged S.Q.'s 10 half siblings had been found to be abused or neglected in prior dependency proceedings and S.Q. was at substantial risk of suffering similar neglect or abuse. The department subsequently filed a first amended petition, adding that S.Q.'s umbilical cord had tested positive for amphetamine and methamphetamine. Father was identified as an alleged father. S.Q. was detained and placed in a licensed foster home.

On June 13, 2022, the juvenile court held a detention hearing and ordered S.Q. detained. Neither mother nor father were present.

---

[1] All further statutory references are to the Welfare and Institutions Code.

**Jurisdiction and Disposition**

On June 27, 2022, the juvenile court held a jurisdiction hearing. Neither parent appeared. The court found the allegations in the amended petition true.

On August 1, 2022, the juvenile court held a disposition hearing where father made his first appearance. The hearing was continued for appointment of counsel for father. At the continued hearing, the court ordered S.Q. removed from parental custody. The court ordered reunification services not be provided to mother pursuant to section 361.5, subdivision (b)(10) and (11), and that reunification services not be provided to father because of his alleged status. Father's counsel requested a DNA test, which the court granted. The court gave the department discretion to assess father for visits if he was elevated to biological father. A section 366.26 hearing was set.

**Section 366.26 and Section 388 Request to Change Court Order**

*Section 366.26 Report*

In its report, the department recommended terminating parental rights and selecting adoption as the permanent plan. S.Q. was still in the same foster home and her care providers were committed to adopting her. Father participated in a DNA test, which revealed he was S.Q.'s biological father. Thereafter, he began participating in supervised visits. He participated in four total visits. The department opined there did not appear to be a beneficial parent/child relationship and that terminating parental rights was unlikely to be detrimental to S.Q. as she did not show signs of distress when leaving visits. By this time, S.Q. was five months old and had been out of mother and father's care since she was three days old.

*Initial Section 366.26 Hearing*

On November 16, 2022, the juvenile court held a section 366.26 hearing. Father's counsel informed the court that DNA results revealed father was S.Q.'s biological father and he immediately began visits with her. The court elevated father's status to biological father. The hearing was continued so that father could be further assessed.

*Section 388 Request to Change Court Order*

On November 22, 2022, father filed a "Request to Change Court Order" (JV-180) requesting the juvenile court order a plan of family reunification for father as DNA results had revealed he was the biological father. Father had begun visits and they were going well. The court set a hearing to decide whether it would grant or deny an evidentiary hearing and scheduled it for the same day as the continued section 366.26 hearing.

*Addendum Report*

In an addendum report, the department recommended terminating parental rights, selecting adoption as the permanent plan, and denying father's JV-180.

The report detailed father's assessment for services and visits. Father had agreed to participate in a fifth supervised visit with S.Q. In regard to services, the social worker asked father what services he felt would be beneficial. Father responded, " 'Housing. I don't know.' " The social worker explained the department could offer him parenting classes, mental health treatment, substance abuse treatment, child abuse classes, and domestic violence classes. Father stated he wanted mental health services and parenting classes. When asked if he wanted substance abuse treatment, he responded, " 'I think I got that under control.' " He explained he did not get high anymore, but would not disclose his drug of choice and did not want to talk about it. The social worker informed him paternal relatives disclosed he had an extensive history of substance abuse and encouraged him to reach out to the department if he wanted to discuss it further.

The department also addressed father's JV-180. Since receiving DNA results, father had only participated in four supervised visits. During the visits, he was attentive to S.Q. by burping her, feeding her, changing her diaper, and rocking her to sleep. The department reported that although visits were appropriate, there did not appear to be a beneficial parent/child relationship. Father had not consistently visited S.Q., and she did not show any signs of distress when leaving father at the end of visits. Additionally,

4.

father had reported he planned on having paternal aunt apply for guardianship of S.Q. because he was not in the best position to take care of her on his own. The department concluded the potential harm of severing the relationship between S.Q. and her parents did not outweigh the security, finality, and sense of belonging that adoption would provide her. S.Q. was considered to be generally adoptable because of her young age, good health, and lack of significant developmental delays. She was also specifically adoptable because her care providers were fully committed to adopting her. The department further opined S.Q. would not likely benefit from reunification services because father did not appear open to discussing his reported 13-year substance abuse history and denied having a problem. Thus, the department recommended father's JV-180 be denied.

### *Section 388 and Continued Section 366.26 Hearing*

On December 21, 2022, the juvenile court held the continued section 366.26 hearing where it also addressed father's JV-180. Father did not appear. Father's counsel submitted on the evidence, but entered a general objection to the termination of parental rights. The court found it was in S.Q.'s best interest to deny father's JV-180 for the reasons stated in the department's report. Further, the court found by clear and convincing evidence S.Q. was likely to be adopted, terminated parental rights, and selected a permanent plan of adoption.

## DISCUSSION

"If the court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a hearing under section 366.26." (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).) "[T]he goal at the section 366.26 hearing is 'specifically … to select and implement a permanent plan for the child.' " (*Ibid.*) "At [the] hearing, the court may order one of three alternatives: adoption, guardianship or long-term foster care." (*In re S.B.* (2008) 164 Cal.App.4th 289, 296.) "According to [the] procedure [under section 366.26], the court must first determine by clear and

convincing evidence whether the child is likely to be adopted. [Citation.] If so, and if the court finds that there has been a previous determination that reunification services be terminated, then the court shall terminate parental rights to allow for adoption. [Citation.] But if the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan." (*Caden C.*, at pp. 630–631.) One exception to adoption is the parental-benefit exception, which requires the parent to establish, by a preponderance of the evidence, "that the parent has regularly visited with the child, that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child." (*Id.* at p. 629; § 366.26, subd. (c)(1)(B)(i).)

In the present case, father does not address how the termination findings or orders were erroneous. He asserts he cooperated with the department and experienced several incidents that were illegal, but fails to elaborate further. He asks for help and for "the correct decision and moral choice [to] be brought to light."

An appealed-from judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the appellant's burden to raise claims of reversible error or other defect and present argument and authority on each point made. If the appellant fails to do so, the appeal may be dismissed. (*In re Sade C.* (1996) 13 Cal.4th 952, 994.) On this record, we conclude father failed to make a good cause showing that an arguable issue of reversible error exists. Further, although we are not required to do so, we have reviewed the record as it relates to the section 366.26 hearing and have found no arguable issues. Accordingly, we dismiss the appeal.

## DISPOSITION

This appeal is dismissed.